UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY WILLIAM McCLUNEY,<br>                             Plaintiff,<br>v.<br>JEFFREY BEARD, Secretary,<br>                             Defendant. | Case No.: 14cv1470-BEN (DHB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

    Jerry William McCluney ("Petitioner" or "McCluney"), a state prisoner proceeding pro se and in forma pauperis with a 28 U.S.C. § 2254 petition for writ of habeas corpus ("Petition"), seeks relief from his March 19, 2010 conviction, and his 21 year and four month sentence in San Diego Superior Court Case No. SCD212842 for one count of assault with a firearm and one count of possession of cocaine for sale. (ECF No. 1.[1]) Petitioner alleges juror misconduct as his sole ground for relief. Respondent has filed an Answer opposing habeas relief (ECF No. 9), and Petitioner has filed a Traverse. (ECF No. 25.) The Court has reviewed the parties' pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** that the Petition for Writ

---

[1] Unless otherwise noted, page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing (ECF) system.

1

of Habeas Corpus be **DENIED**.

## I. BACKGROUND

On January 8, 2009, Petitioner was charged in an amended information with: (1) Attempted Murder (Penal Code § 664, 187(a)); (2) Assault with a Semi-Automatic Firearm (Penal Code § 245(b)); (3) Assault with a Deadly Weapon (Penal Code § 245(a)(1)); and (4) Possession of Cocaine for Sale (Health & Safety Code § 11351.5). (Respondent's Lodgment ("Lodgment") No. 1, vol. 1 at 8-10.) The case proceeded to a jury trial, and during deliberations, an issue arose regarding one of the jurors "Googling" the definition of attempted murder. The trial court granted Petitioner's motion to excuse the juror for misconduct, and an alternate juror was selected as a replacement. (Lodgment No. 1, vol. 2 at 444-45.) Thereafter, on January 23, 2009, a jury convicted Petitioner of assault with a firearm (count 2) and cocaine possession (count 4). (Lodgment No. 1, vol. 2 at 448-449.) However, the jury could not reach a verdict on attempted murder (count 1) or assault with a deadly weapon (count 3). Therefore, the court declared a mistrial as to counts 1 and 3. (Lodgment No. 1, vol. 2 at 446-447.)

Subsequently, Petitioner was re-tried on the remaining charges. On June 26, 2009, a second jury convicted Petitioner of assault with a deadly weapon (count 3). (Lodgment No. 1, vol. 2 at 497-500.) The second jury could not reach a verdict regarding the attempted murder charge (count 1), and a mistrial was declared on that count. (Lodgment No. 1, vol. 2 at 500.) The trial court also denied Petitioner's request to disclose identifying information regarding the jurors from the first trial, so that he could investigate whether there had been another incident of juror misconduct regarding the use of a dictionary. (Lodgment No. 1, vol. 2 at 507.)

On March 19, 2010, Petitioner was sentenced to state prison for a term of 21 years and four months. (Lodgment No. 1, vol. 2 at 393-94.)

Petitioner appealed his conviction. (Lodgment No. 4.) His direct appeal raised four issues: (1) ineffective assistance of trial counsel for presenting Petitioner to the prosecutor for an interview; (2) Sixth Amendment violation of right to confront accuser;

(3) erroneous admission of irrelevant and prejudicial drug evidence; and (4) failure of the trial court to conduct a hearing regarding jury misconduct in the first trial. (*Id.*)  On November 20, 2011, the Court of Appeal rejected Petitioner's first three claims. (Lodgment No. 7 at 6-19.)  The Court agreed with Petitioner on his fourth claim, and vacated the convictions reached at the first trial on counts 2 and 4. (*Id.* at 19-24.)  The Court remanded the case to the trial court to conduct a hearing to investigate the jury misconduct allegations, and to reconsider a new-trial motion for the first trial. (*Id.* at 24.) The Court of Appeal further held that if the renewed new-trial motion was denied, the convictions on counts 2 and 4 would be reinstated. (*Id.*)  Petitioner did not file a Petition for Review regarding his first three claims.

On July 6, 2012, the trial court denied Petitioner's renewed motion for new trial, and the convictions on counts 2 and 4 were reinstated. (Lodgment No. 8 at 104.) Thereafter, Petitioner appealed the trial court's ruling (Lodgment No. 10), and on August 7, 2013, the Court of Appeal affirmed. (Lodgment No. 13.)

Petitioner filed a Petition for Review in the California Supreme Court. (Lodgment No. 14.)  The only claim Petitioner raised in the Petition was the jury misconduct claim. (*Id.*)  On October 16, 2013, the California Supreme Court summarily denied review. (Lodgment No. 15).

On June 16, 2014, Petitioner filed the instant federal Petition for Writ of Habeas Corpus. (ECF No. 1.)  Petitioner alleged a single claim for relief – jury misconduct. (*Id.*) On August 21, 2014, Respondent filed an Answer to the Petition. (ECF No. 9.)  In the Answer, Respondent noted that the three other claims Petitioner raised on direct appeal were never presented to the California Supreme Court, and as a result were procedurally defaulted. (*Id.* at 5.)

On September 23, 2014, Petitioner filed a motion for stay and abeyance of his federal habeas corpus petition. (ECF No. 16.)  On January 23, 2015, the Court issued a Report and Recommendation, recommending Petitioner's Motion for Stay and Abeyance be denied. (ECF No. 22.)  On March 17, 2015, Judge Benitez adopted the Report and

Recommendation. (ECF No. 24.) On March 23, 2015, Petitioner filed his Traverse. (ECF No. 25.)

## II. DISCUSSION

### A. Standard of Review

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different form the governing law set forth in the United States Supreme Court cases, or it if decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than

incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established federal law" means the law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Circuit precedent may be pertinent to the extent it illuminates the meaning and application of Supreme Court precedent, but "[o]nly Supreme Court precedents are binding on state courts under AEDPA." *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005). "[W]hen a Supreme Court decision does not 'squarely address[] the issue' . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). S*ee also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches. 28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991).

**B.     Petitioner's Juror Misconduct Claim**

Petitioner argues that juror misconduct at his first trial violated his Sixth Amendment right to trial by an impartial jury when one of the jurors looked up the definition of "intent" in the dictionary. (ECF No. 1.) Petitioner also makes reference to a second incident of juror misconduct, when a different juror performed a Google search to find the definition of "attempted murder." (*Id.*) However, it does not appear that

Petitioner is raising the Google incident here.[2]  Indeed, at the conclusion of his Petition, he expressly disavows the claim as follows:

> "[T]he trial court found there had been two incidents of juror misconduct, and ruled the presumption of prejudice was rebutted in the first "Google" incident where the offending juror had been replaced, and the jury never convicted petitioner of the attempted murder that was the subject of the Google search. *Petitioner does not challenge that ruling.*  Even though the prosecution presented no evidence on the issue, *the record makes clear there was no prejudice* the offending juror was excused and the jury did not return a verdict on the attempted murder charge."

(ECF No. 1 at 19) (emphasis added).  Therefore, the Court finds Petitioner's juror misconduct claim is directed only at the dictionary incident.

Petitioner presented the juror misconduct claim to the California Supreme Court, and it was denied without comment.  (Lodgment Nos. 14 and 15.)  The Court will therefore look through the silent denial to the last reasoned decision, which is the Court of Appeal's August 7, 2013 opinion.  (Lodgment No. 13.)  *Ylst*, 501 U.S. at 804.

In reviewing Petitioner's claim, the California Court of Appeal set forth the following underlying facts related to the claim.  *See Dyer v. Calderon*, 151 F.3d 970, 979 n.11 (9th Cir. 1998) (stating that "[s]tate appellate court findings are normally entitled to a presumption of correctness").

> After the jury in the second trial reached its verdict, McCluney requested that the court release contact information for the jurors in the first trial, or set a hearing pursuant to Code of Civil Procedure section 237. McCluney's request was based on evidence discovered by a defense investigator that suggested there may have been juror misconduct during deliberations in the first trial.  The investigator said that he had spoken with a juror from the first trial who told the investigator that "'another juror had looked up "intent" in a dictionary but did not comment on the meaning of the word.'"  This juror told the investigator that "'[t]his occurred after the decision on the lesser counts and prior to the jury hanging on the remaining count(s).'"  (*McCluney I, supra*, at *26.)  The trial court denied the motion.

---

[2] Petitioner did not raise the Google incident before the California Supreme Court.  (*See* Lodgment No. 14.)

6

(*Ibid.*)

On appeal, this court concluded that the trial court had abused its discretion in not conducting a hearing regarding the alleged juror misconduct. (*McCluney I*, *supra*, D057015.) We vacated McCluney's convictions on counts 2 and 4 and remanded the case to the trial court for a hearing pursuant to Code of Civil Procedure section 237. (*McCluney I, supra*, at *33.)

On remand, the trial court held a hearing and granted McCluney's request to release the juror's contact information. McCluney subsequently moved for a new trial, arguing that there had been prejudicial juror misconduct in his first trial.

At a hearing on a motion for a new trial, the court heard testimony from Juror No. 8. Juror No. 8 remembered a discussion in the jury room during deliberations in McCluney's first trial concerning a dictionary. According to Juror No. 8, the jurors had been "going around and around about intent" when one of the other jurors said, "'The dictionary says--.'" Before that juror said anything more, the other jurors stopped him and told him that he could not discuss what he had read in the dictionary. Juror No. 8 said that at the point that the juror in question had mentioned the dictionary, the jury had "already reached a verdict" on the counts on which the jury ultimately was able to reach a verdict (counts 2 and 4). Juror No. 8 could not recall whether anyone had actually brought a dictionary into the jury room. Juror No. 8 did remember, however, that the other jurors immediately told the juror who mentioned the dictionary that they were not permitted to "'look at anything else'" and that the juror should not reveal anything else concerning what the dictionary said about "intent."

The trial court concluded that although McCluney had established juror misconduct, the People had rebutted any presumption of prejudice resulting from that misconduct. In reaching its conclusion, the court determined that the juror who had consulted the dictionary had not shared with the other jurors any definition that he had found. The court was also satisfied that no dictionary had been taken into the jury room.

(Lodgment No. 13 at 4-6.)

///

///

In analyzing Petitioner's claim, the Court of Appeal set forth the following legal standard:

> Juror misconduct involving the receipt of extraneous information that was not part of the evidence received at trial creates a presumption that the defendant was prejudiced by the evidence and may establish juror bias. (*People v. Nesler* (1997) 16 Cal.4th 561, 578 (*Nesler*).) This is because "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it . . . ." (*Smith v. Phillips* (1982) 455 U.S. 209, 217.)
>
> Because juror misconduct gives rise to a presumption of prejudice, the prosecution must rebut the presumption by demonstrating that "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment." (*People v. Clair* (1992) 2 Cal.4th 629, 668 (*Clair*); see also *People v. Hardy* (1992) 2 Cal.4th 86, 174 ["The presumption of prejudice may be rebutted, inter alia, by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm."].)

(*Id.* at 7.)

The Court of appeal went on to conclude that there was no "'substantial likelihood that any juror was improperly influenced to the defendant's detriment' [therefore,] there is no basis for reversing McCluney's convictions on counts 2 and 4 on the ground of juror misconduct." (*Id.* at 10-11 (citation omitted).) This is consistent with federal law.

A criminal defendant has a Sixth Amendment right to an impartial jury where jurors consider only the evidence which is presented to them in open court. *Turner v. Louisiana*, 379 U.S. 466, 472-473, (1965) ("The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury."). However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v.*

1 *Phillips*, 455 U.S. 209, 217 (1982).   According to the Supreme Court, the remedy for an
2 allegation of juror misconduct is a hearing where the trial court determines the
3 circumstances of the alleged misconduct, its impact on the jurors, and whether or not it
4 was prejudicial.  *Remmer v. United States*, 347 U.S. 227, 229-30 (1954); *Smith*, 455 U.S.
5 at 216.  Where extrinsic information is introduced into a jury's deliberations, relief is
6 warranted only if "the extrinsic information had a 'substantial and injurious effect or
7 influence in determining the jury's verdict.'" *Sassounian v. Roe*, 230 F.3d 1097, 1108
8 (9th Cir. 2000) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

9 Here, in accordance with *Remmer* and *Smith*, a hearing was held to determine
10 whether Petitioner suffered prejudice as a result of the dictionary incident.  Further, the
11 Court of Appeal applied the correct legal standard – harmless error – in assessing
12 Petitioner's claim.  Therefore, the Court finds "neither the reasoning nor the result of the
13 state-court decision contradicts" Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3,
14 8 (2000).  Therefore, the state court's opinion is not contrary to or an unreasonable
15 application of clearly established law.

16 The Court of Appeal's opinion also does not rest on an objectively unreasonable
17 determination of the facts.  The Court of Appeal agreed with the trial court that a juror's
18 use of a dictionary to define an element of a charge was misconduct which gave rise to a
19 presumption of prejudice. (Lodgment No. 13.)  The Court of Appeal then analyzed the
20 prejudice to Petitioner under two different tests.  First, the court looked at whether, under
21 an objective standard, the extrinsic evidence used was "inherently and substantially likely
22 to have influenced the juror."   (*Id.*)   Next, the court looked at the totality of the
23 circumstances, including the nature of the misconduct, to determine if it was substantially
24 likely the juror was actually biased against the defendant.  (*Id.*)

25 Under the first test, the court looked at the extrinsic evidence of the dictionary
26 definition within the context of the overall deliberations and came to the following
27 conclusions: (1) only one juror was exposed to the dictionary definition; (2) the jury had
28 already reached its verdicts as to the counts of which Petitioner was convicted; and (3)

the jury did not reach a verdict on the attempted murder charge. (*Id.*) Ultimately, the court found that "the fact that a single juror may have looked at a dictionary definition of the word 'intent' was not inherently and substantially likely to have influenced the jury's verdicts on counts 2 and 4." (*Id.* at 9.)

Next, the court looked at whether "'it [was] substantially likely [that any particular] juror was actually biased against [Petitioner] . . . .' [*People v. Tafoya*, 42 Cal.4th 147, 192 (2007).]" (*Id.* at 10.) The court concluded that there was no substantial likelihood "the juror who obtained an extraneous dictionary definition of 'intent' was actually biased against [Petitioner]." (*Id.*) The court stated that the juror "did not bring up this information to the other jurors in a manner that indicated a desire to use the information against [Petitioner.] Rather it appears that this juror was simply involved in a misguided effort to determine whether [Petitioner] entertained the required mental states to be convicted on the attempted murder charge." (*Id.*) Further, the court determined that there was no substantial likelihood any other juror was actually biased against Petitioner. (*Id.*) The court noted that Petitioner had testified at trial and essentially admitted he engaged in the conduct underlying his convictions on counts two and four. The Court found the fact that Petitioner was only convicted on those two counts, and not the attempted murder charge, demonstrated that the jury deliberated without actual bias against Petitioner. (*Id.*)

Here, the Court notes the discussion of the dictionary definition of "intent" was so brief that none of the other jurors heard the offered definition. As soon as the juror offering the extrinsic definition began to speak, the other jurors stopped him and pointed out that the discussion was improper. Further, the discussion came up after the jury had reached a decision on counts two and four, which were the only counts Petitioner was convicted of. The jury did not convict Petitioner of the attempted murder charge, which was the only charge for which the juror attempted to introduce the extrinsic dictionary definition evidence. Therefore, based on the record, the Court finds it was not unreasonable for the Court of Appeal to conclude that the jury's ultimate verdict was not

affected by one juror stating his knowledge of the dictionary definition of "intent." Accordingly, the Court finds the state court's opinion does not rest on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002).

Based on the foregoing, the Court **RECOMMENDS** that Petitioner's claim for habeas relief on the ground of juror misconduct be **DENIED**.

### III. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Roger T. Benitez under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

**IT IS HEREBY ORDERED** that no later than **September 11, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than ten (10) days from service of Petitioner's filed Objections. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: August 27, 2015

Hon. David H. Bartick
United States Magistrate Judge